UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KONINKLIJKE PHILIPS N.V.,

                            Plaintiff,                        **REPORT AND**
                                                                         **RECOMMENDATION**
              -against-                            CV 21-1910 (AMD)(AYS)

10793060 CANADA INC., ELECTRONICS
AG INC., INNOVATIVE WAREHOUSE
SOLUTIONS, LLC AND
BOXSOURCE.COM, INC.,

                            Defendants.
----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Ann M. Donnelly for report and recommendation, is the motion of Plaintiff, Koninklijke Philips, N.V. ("Plaintiff"), for a default judgment against Defendants 10793060 Canada Inc and Electronics AG Inc. (Docket Entry ("DE") [63].) By way of a Complaint filed on April 8, 2021, Plaintiff commenced this action against Defendants 10793060 Canada Inc., Electronics AG Inc, Innovative Warehouse Solutions, LLC, and BoxSource.com, Inc. (collectively, "Defendants"), alleging various claims for trademark and trade dress infringement, as well as patent infringement, and certain related state law claims, arising out of the alleged sales by Defendants of counterfeit razor blades in the United States. (Compl., DE [1].) In March 2022, Plaintiff settled the within action with Innovative Warehouse Solutions, LLC and BoxSource.com, Inc., and filed stipulations of dismissal with respect to those defendants. (DE [47], [48].)

       While Defendants 10793060 Canada Inc. and Electronics AG Inc. (collectively, the "Canadian Defendants") initially appeared in this action, counsel for both parties was relieved by Order of this Court on June 7, 2022. The Canadian Defendants were afforded time to obtain new

1

counsel and were advised that, as corporate entities, they are not permitted to represent themselves in this action. The Canadian Defendants were further advised that failure to obtain new counsel could result in the imposition of a default judgment. (Order of Shields, M.J. dated June 7, 2022.)

New counsel never appeared on behalf of the Canadian Defendants. On August 15, 2022, Plaintiff filed the within motion for default judgment against the Canadian Defendants, (DE [63]), which Judge Donnelly referred to this Court for a report and recommendation as to whether the motion should be granted and, if so, to determine the appropriate amount of damages, costs and fees, if any, to be awarded. (Elec. Order of Donnelly, J., dated Aug. 16, 2022.)

An inquest was held before the undersigned on December 20, 2022. Defendants did not appear. In support of damages, Plaintiff offered the testimony of Lauren Morrison, a consumer marketing manager for Plaintiff, and Paul Stone-Jansen, an investigator retained by Plaintiff, as well as numerous exhibits. For the following reasons, this Court respectfully recommends that Plaintiff's motion be granted and that Plaintiff be awarded damages as set forth herein.

BACKGROUND

Since 2015, Plaintiff has sold OneBlade hybrid electric shavers and shaver heads online and in brick-and-mortar retail stores to consumers. (Tr. of Inquest held on Dec. 20, 2022 ("Tr.") 33-34; Pl. Ex. 10.) Genuine OneBlade shaver heads retail for around $13.00 each and Plaintiff's net profit per shaver head is around $4.50. (Tr. 16-18, 37-39; Pl. Ex. 11.)

The Canadian Defendants operated an online retail store under the name ShaverParts, which claimed to be "ranked #1 razor parts store in the world," as well as other Amazon webstores under the ShaverParts name and other aliases. (Tr. 53-57; Pl. Exs. 13-14.) The

Canadian Defendants are alleged to have sold counterfeit OneBlade products in the United States through these webstores for approximately $14.95 to $20.50 per unit. (Tr. 51-53, 61-69; Pl. Exs. 12-17, 19-21.) Plaintiff first purchased counterfeit OneBlade products from the Canadian Defendants on December 28, 2020. (Id.)

The Canadian Defendants' President, Alain Gazeryan ("Gazeryan"), volunteered information about his business to the investigator retained by Plaintiff, Paul Stone-Jansen ("Stone"), including the ability to produce 100,000 units of razor parts per month with the capacity to produce another 50,000 units per month and "unlimited" numbers with expanded operations. (Tr. 57-61.) In addition, Gazeryan advised Stone that he worked with "several" Chinese manufacturers. (Tr. 60.) Based on Gazeryan's admissions, the evidence adduced at the inquest established that the Canadian Defendants are projected to have sold between 2.4 million and 3.6 million units of counterfeit OneBlade shaver heads.

Upon the conclusion of the inquest, the Court found, on the record, that Plaintiff owns:

(1)   valid and enforceable federally registered and common law trademark rights for the Wave Design Logo used in the OneBlade shaver packaging;

(2)   valid and enforceable common law trademark rights in the product name OneBlade for electric shavers, shaver heads, and related accessories;

(3)   valid and enforceable common law trade dress rights in the lime green color used on the OneBlade shaver products; and,

(4)   valid and enforceable common law trade dress rights in the Single Shaver Head Package used by Plaintiff, consisting of a solid lime green front panel, a clear plastic shaver head housing, and a black panel with the white Wave Design positioned above a blue background. (Tr. 73.)

The Court further found that the Canadian Defendants knowingly and intentionally counterfeited and infringed Plaintiff's trademark rights, and that this action qualifies as an exceptional action under Section 35(a) of the Lanham Act. Finally, this Court determined that,

3

based on the evidence before it, Plaintiffs are entitled to a permanent injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure. (Tr. 73-74.)

## DISCUSSION

I.  Legal Standard – Default Judgment

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d. Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. See Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. See id.

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, "[i]t is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." Allstate Ins. Co. v. Howell, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the district court must

determine whether a plaintiff's allegations establish liability as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

For the reasons set forth on the record during the inquest held in this action on December 20, 2022, this Court finds that Plaintiff is entitled to a default judgment against the Canadian Defendants. (Tr. 73-74.)

II.  Damages

    A.  Standard Applicable to a Damages Award Following Default Judgment

Unlike allegations pertaining to liability and proximate cause, allegations set forth in connection with damages are not deemed admitted on account of a defendant's default. See, e.g., Greyhound Exhibitgroup, 973 F.2d at 158; Olvera v. Los Taquitos Del Tio Inc., No. 15 Civ. 1262, 2015 WL 3650238, *1 (E.D.N.Y. June 11, 2015); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364, at *2 (E.D.N.Y. June 9, 2015). Instead, a plaintiff seeking damages from a defaulting defendant must prove entitlement to damages to a "reasonable certainty." Olvera, 2015 WL 3620364, at *1. Reasonable certainty means that "damages may not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote or the result of other intervening causes." Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999). While the party seeking damages is entitled to all reasonable inferences from the evidence it offers, a court must "ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded." Avelar v. Quiros, Inc., No. 13-CV-7017, 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011) (citing Au Bon Pain Corp. v. Artect,

5

Inc., 653 F.2d 61, 65 (2d Cir.1981)). The court determining damages has the discretion to hold an evidentiary hearing. See Fed. R. Civ. P. 55(b)(2); see also Castellanos v. Deli Casagrande Corp., No. CV 11-245, 2013 WL 1207058, at *3 (E.D.N.Y. Mar. 7, 2013), adopted by, 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013). While such a hearing is not required, this Court exercised its discretion and held an evidentiary hearing on December 20, 2022.

    B.    Lanham Act Damages[1]

Under Section 35 of the Lanham Act, Plaintiff is entitled to: (1) any damages it sustained; (2) Defendants' profits; and, (3) statutory damages for Defendants' willful counterfeiting. See 15 U.S.C. §§ 1117(a), 1117(c); Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 176 F. Supp. 3d 137, 159-165 (E.D.N.Y. 2016).

    1.    Section 35(a) Damages – Lost Profits

Pursuant to Section 1117(a) of the Lanham Act, a plaintiff alleging trademark infringement is entitled to "any damages [it] sustained" as a result of the infringement, including lost profits. Abbott Laboratories v. H&H Wholesale Servs., Inc., No. 15-cv-5826, 2022 WL 17977495, at *3 (E.D.N.Y. Dec. 28, 2022) (noting that actual damages "may include compensation for . . . lost sales or revenue"); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 628 F. Supp. 2d 312, 320 (E.D.N.Y. 2009) ("A calculation of plaintiff's damages may include its lost profits."). "Lost profits are calculated by estimating revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue." GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002) (citing Murphy

---

[1] While Plaintiff's Complaint contains a cause of action for patent infringement, and it introduced evidence of such infringement during the inquest, Plaintiff advised the Court that it has elected not to proceed with respect to any damages attributable to Defendants' patent infringement as such damages would be duplicative of the recovery sought under the Lanham Act. (Tr. 73; see also Pl. Proposed Findings of Fact and Conclusions of Law, DE [70], 6 n.3.)

6

Door Bed, Co. v. Interior Sleep Sys., Inc., 874 F.2d 95, 103 (2d Cir. 1989)). The Court may "engage in some degree of speculation" in computing lost profits, PPX Enters., Inc. v. Audiofidelity Enters., 818 F.2d 266, 271 (2d. Cir. 1987), and any doubts regarding the amount of damages shall be resolved against the infringer. See Victoria Crusies, Inc. v. Changjiang Cruise Overseas Travel Co., 630 F. Supp. 2d 255, 262 (E.D.N.Y. 2008) (citation omitted).

During the inquest, Plaintiff established that its net profit per OneBlade shaver head is $4.50 per unit. It can be assumed that each sale of a counterfeit OneBlade shaver head made by the Canadian Defendants is a sale directly taken away from Plaintiff. Plaintiff further established that the Canadian Defendants have been selling the counterfeit razor blades since at least December 28, 2020. Finally, based on Gazeryan's admissions to Stone, the Canadian Defendants advised that they were capable of producing 100,000 replacement parts per month with a capacity to produce 150,000 units per month. Based on the foregoing evidence introduced at the inquest, it is reasonable to infer that the Canadian Defendants have sold between 2.4 million and 3.6 million units of counterfeit OneBlade shaver units since December 28, 2020.

Because it is impossible to determine exactly how many counterfeit OneBlade shaver units the Canadian Defendants have sold, this Court recommends taking the median amount of counterfeit razor blades sold – 3.0 million – and basing Plaintiff's damages award on that number. Applying this number to a net profit loss of $4.50 per unit results in an estimated lost profits award of $13.5 million. Accordingly, this Court respectfully recommends that Plaintiff be awarded lost profits in the amount of $13.5 million.

    2.    Section 35(a) Damages – the Canadian Defendants' Profits

As stated above, in addition to lost profits, Plaintiff is also entitled to a disgorgement of the Canadian Defendants' total profits. See 15 U.S.C. § 1117(a); see also Koon

7

Chun, 628 F. Supp. 2d at 320 (noting that "§ 1117(a) provides for an award of plaintiff's damages in addition to an award of defendants' profits"). "[A] trademark 'infringer is required in equity to account for and yield up his gains to the true owner,' and 'profits are then allowed as an equitable measure of compensation.'" Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 131 (2d Cir. 2014) (quoting Hamilton-Brown Shoe Cov. V. Wolf Bros. & Co., 240 U.S. 251, 259 (1916)).

Here, Plaintiff established at the inquest that the Canadian Defendants sold counterfeit OneBlade products in the United States, charging between $14.95 and $20.50 per unit and incurred costs of $6.00 to $7.00 per unit. Accordingly, the Canadian Defendants earned between $8.95 and $13.50 in profits per each counterfeit unit sold. Again, this Court recommends using a median number for calculating damages, resulting in estimated profits earned of $11.23 per unit sold. Using the median amount of counterfeit razor blades sold of 3.0 million, as suggested above, results in an estimate of the Canadian Defendants' profits in the amount of $33.69 million, which this Court respectfully recommends Plaintiff be awarded.

### 3.   Section 35(c) - Statutory Damages

Pursuant to Section 35(c) of the Lanham Act, Plaintiff elects to pursue statutory damages only for its Wave Design trademark and not its other common law trademark and trade dress rights. (Pl. Proposed Findings of Fact and Conclusions of Law 10.)

"Courts maintain 'wide discretion' in determining an award of statutory damages." Innovation Ventures, 176 F. Supp. 3d at 165 (quoting Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., 807 F.2d 1110, 1116-17 (2d Cir. 1986)). The Second Circuit has set forth the following factors to consider in determining the appropriate amount of statutory damages to award:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff;
> (3) the value of the [mark]; (4) the deterrent effect on others besides the defendant;

8

>   (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Innovation Ventures, 176 F. Supp. 3d at 165 (citing Fitzgerald Publ'g, 807 F.2d at 116-17). "A defendant's default may be considered as evidence of willful infringement." Victoria Cruises, 630 F. Supp. 2d at 261 (citing cases).

As stated on the record during the inquest held before the undersigned, this Court has already found that the Canadian Defendants' conduct was willful, which warrants an award of the statutory maximum of $2 million for their infringement of Plaintiff's federally registered Wave Design trademark. See 15 U.S.C. § 1117(c)(2) ("[I]f the Court finds that the use of the counterfeit mark was willful, [the court may award] not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.") In addition, applying the factors enunciated by the Second Circuit for determining the appropriate amount of statutory damages, as set forth above, the Court finds that all of the factors weigh in favor of awarding Plaintiff the statutory maximum of $2 million as well. Accordingly, this Court respectfully recommends that Plaintiff be awarded statutory damages in the maximum amount permitted - $2 million.

   C.   Attorney's Fees and Costs

Pursuant to Section 1117(a), a court may award reasonable attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "An 'exceptional case' is one in which the losing party acted with bad faith or for oppressive reasons." Ritchie v. Gano, 754 F. Supp. 2d 605, 608 (S.D.N.Y. 2010) (citing GMA Accessories, Inc. v. Croscill, Inc., No. 06 Civ. 6236, 2008 WL 591803, at *11 (S.D.N.Y. Mar. 3, 2008)). As stated on the record during the inquest held before the undersigned, the Court finds that the Canadian Defendants' actions herein

9

qualify this action as an exceptional case. Accordingly, this Court respectfully recommends that Plaintiff be granted leave to make an application to recover its reasonable attorney's fees incurred in bringing this action.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for default judgment against Defendants 10793060 Canada Inc. and Electronics AG Inc. be granted and that Plaintiff be awarded damages as follows: (1) a permanent injunction, consistent with Plaintiff's proposed order filed at Docket Entry [70-3]; (2) lost profits in the amount of $13.5 million; (3) disgorgement of Defendants' profits in the amount of $33.69 million; and (4) statutory damages in the maximum amount of $2 million, for a total monetary award of $49.19 million. Finally, this Court respectfully recommends that Plaintiff be granted leave to make an application to recover its reasonable attorney's fees incurred in bringing this action.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants at their last known address(es), and to file proof of service on the docket sheet, by February 24, 2023. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of

Appeals.  Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
February 22, 2023

                                                 /s/ Anne Y. Shields
                                               ANNE Y. SHIELDS
                                               United States Magistrate Judge